ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br><br>V.<br><br>MIGUEL MOLINA ESTEVES<br><br>Peticionario | TA2025RE00016 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: K MI2025-0222<br><br>Sobre:<br><br>HABEAS CORPUS |

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 28 de enero de 2026.

El señor Miguel Molina Estévez (señor Molina Estévez o peticionario) mediante recurso de *Habeas Corpus* presentado el 29 de diciembre de 2025, nos solicita que dejemos sin efecto la *Resolución* emitida por el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario) el 19 de diciembre de 2025. Mediante el referido dictamen, el foro primario declaró "No Ha Lugar" la petición de *Habeas Corpus* por ser distinguible del precedente Pueblo v. Vélez Torres, 212 DPR 175 (2023).

Por los fundamentos que expondremos a continuación, se *confirma* la determinación del foro primario.

## I.

La controversia ante nuestra consideración tuvo su origen el 11 de julio de 2012, fecha en que el señor Molina Estévez, ciudadano dominicano, fue acusado por el Ministerio Público por violaciones al Artículo 216 del Código Penal de Puerto Rico

(apropiación ilegal de identidad) y delitos conexos.[1] Ante ello, el 15 de noviembre de 2012, este formuló alegación de culpabilidad ante el TPI.[2] Así las cosas, el 8 de febrero de 2013, el foro primario dictó *Sentencia Suspendida* de seis (6) años de reclusión bajo libertad a prueba, en la cual impuso condiciones de residencia, supervisión sociopenal y prohibición de salir de la jurisdicción sin autorización judicial.[3]

Durante el término probatorio, en octubre de 2013, el señor Molina Estévez fue intervenido por el U.S. Immigration and Customs Enforcement (ICE), luego de lo cual quedó en libertad supervisada por esa agencia mientras se resolvía su situación migratoria. Luego, en diciembre de 2013, un juez de inmigración le concedió salida voluntaria a la República Dominicana en o antes del 18 de abril de 2014, por lo que el Departamento de Corrección y Rehabilitación (DCR) archivó administrativamente el expediente y solicitó dejar sin efecto la vista de seguimiento. Sin embargo, el 22 de diciembre de 2014, ICE certificó que el señor Molina Estévez no abordó el vuelo programado, por lo que, se activó una orden de deportación automática.

Ante esa información, el 17 de septiembre de 2014, el Ministerio Público presentó una moción en la cual solicitó determinación de causa probable en contra del señor Molina Estévez para iniciar la revocación de la libertad a prueba.[4] Al día siguiente, el Hon. Rafael Jiménez Rivera, entonces Juez Municipal, expidió una orden de arresto sin derecho a fianza, y ese mismo día se dictó *Resolución Ex Parte* en la que se determinó causa

---

[1] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).
[2] Entrada #3, Anejo XVII, págs. 47-48 del SUMAC TPI.
[3] Entrada #3, Anejo XV, págs. 42-44 del SUMAC TPI.
[4] Entrada #3, Anejo XIII, págs. 39-40 del SUMAC TPI.

probable.[5] Luego, el 25 de marzo de 2015, se celebró la vista final de revocación en ausencia del señor Molina Estévez y revocó la sentencia suspendida, por lo que, ordenó el cumplimiento de seis (6) años de reclusión consecutiva a cualquier otra sentencia pendiente.[6]

Posteriormente, el señor Molina Estévez fue arrestado en el estado de Nueva York en noviembre de 2018 y trasladado a la jurisdicción federal en mayo de 2019. Ante ello, el 8 de marzo de 2021, la jurisdicción de Puerto Rico fue formalmente notificada de que el peticionario se encontraba bajo custodia federal en el Distrito de Scranton, Pennsylvania, pendiente de juicio.[7] El 6 de octubre de 2022, el Tribunal Federal para el Middle District of Pennsylvania (Caso Núm. 1:19-cr-00082-CCC), sentenció al señor Molina Estévez a setenta y cinco (75) meses de prisión, expresamente consecutivos a la sentencia de Puerto Rico.[8]

Cumplido el término federal, el señor Molina Estévez fue entregado a las autoridades de Puerto Rico y empezó a cumplir su sentencia el 27 de abril de 2025. En desacuerdo, el 29 de julio de 2025, el peticionario presentó ante el foro primario una petición de *Habeas Corpus*.[9] Allí, alegó que, conforme a la doctrina de jurisdicción primaria y al precedente de Pueblo v. Vélez Torres, *supra*, ya había cumplido la sentencia estatal, pues el Estado renunció tácitamente a su jurisdicción al no ejercerla pese a haber sido notificado.

No obstante, el 30 de julio de 2025, el TPI declaró "No Ha Lugar" la petición de *Habeas Corpus* por ser distinguible al caso de Pueblo v. Vélez Torres, por ser una sentencia federal

---

[5] Entrada #3, Anejo X, del SUMAC TPI, págs. 33-34.
[6] Entrada #3, Anejo VIII, del SUMAC TPI, págs. 29-30.
[7] Entrada #3, Anejo VII, del SUMAC TPI, pág. 28.
[8] Entrada #3, Anejo VI, del SUMAC TPI, págs. 21-27.
[9] Entrada #3, Anejo V, del SUMAC TPI, págs. 13-20.

consecutiva.[10] El 4 de agosto de 2025, el señor Molina Estévez presentó una *Moción de Reconsideración y Solicitud de Vista Argumentativa*, en la que sostuvo que el peticionario se encontraba legalmente bajo custodia federal y que el Estado nunca reclamó su jurisdicción.[11]

El 30 de septiembre de 2025, el Hon. Rafael E. Taboas Dávila celebró vista argumentativa en la que comparecieron ambas partes.[12] Analizada las dos posiciones, el 19 de diciembre de 2025, el foro primario dictó una *Resolución* en la que reiteró que no procede la petición de *Habeas Corpus* presentada por el señor Molina Estévez.[13] Este razonó que, el peticionario no se hallaba bajo custodia estatal ni federal al momento de la revocación, y que su ausencia se debía a una evasión voluntaria.

Inconforme con el proceder del foro primario, el 29 de diciembre de 2025, el señor Molina Estévez acudió ante este Tribunal mediante recurso de *Habeas Corpus* y señala los siguientes errores.

> Erró el Tribunal de Primera Instancia al concluir que el caso de autos era distinguible del precedente Pueblo v. Vélez Torres, 212 DPR 175 (2023), basándose exclusivamente en la consecutividad de la sentencia federal.

> Erró el Tribunal de Primera Instancia al no reconocer que el Estado Libre Asociado de Puerto Rico renunció tácitamente a su jurisdicción primaria al no reclamar la custodia del peticionario pese a haber sido notificado formalmente de su localización en custodia federal.

> Erró el Tribunal de Primera Instancia al validar la ejecución de una sentencia estatal ya satisfecha, en violación a la doctrina de primacía jurisdiccional, al debido proceso de ley y a los principios de comity interjurisdiccional.

---

[10] Entrada #3, Anejo IV, del SUMAC TPI, pág. 12.
[11] Entrada #3, Anejo III, del SUMAC TPI, págs. 8-11.
[12] Entrada #3, Anejo I, del SUMAC TPI, págs. 1-4.
[13] Íd.

El 26 de enero de 2026, el Pueblo de Puerto Rico, representado por la Oficina del Procurador General, presentó su oposición al recurso de *Apelación.*

**II.**

**A.**

El auto de *Habeas Corpus,* consagrado en la Sección 13 del Artículo II de la Constitución del Gobierno de Puerto Rico y codificado en el Código de Enjuiciamiento Criminal, 34 LPRA secs. 1741-1780, es un recurso de carácter extraordinario y de naturaleza civil. Este recurso, lo puede presentar una persona que este privada de su libertad, con el fin de solicitar a la autoridad judicial competente que investigue la causa de su detención. Art. 469 (a), Código Enjuiciamiento Criminal, 34 LPRA sec. 1741(a); Pueblo v. Díaz, Rivera, 204 DPR 472, 485 (2020); Quiles v. Del Valle, 167 DPR 458, 467 (2006); Ramos Rosa v. Maldonado Vázquez, 123 DPR 885, 889 (1989).

El Artículo 4.006 (d) de la Ley Núm. 201-2003, mejor conocida como la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico*, 4 LPRA Sec. 24 y(d), (Ley de la Judicatura), autoriza a este Tribunal a expedir autos de *hábeas corpus* y de *Mandamus* en primera instancia. Su uso se limita a aquellas circunstancias que realmente son meritorias, por lo que, no está disponible cuando otros remedios de ley puedan atender la disposición del asunto que permitan impugnar la detención de que trate. En este contexto, el Artículo 469 del Código de Enjuiciamiento Criminal, 34 LPRA sec. 1741, dispone:

> a) Cualquier persona que sea encarcelada o ilegalmente privada de su libertad puede solicitar un auto de hábeas corpus a fin de que se investigue la causa de dicha privación.
>
> b) Ningún juez vendrá obligado a considerar una solicitud de hábeas corpus para investigar la validez de la detención

de una persona recluida en virtud de una sentencia dictada por cualquier Sala del Tribunal de Primera Instancia, si aparece que la legalidad de dicha detención ha sido ya determinada por cualquier juez del Tribunal de Primera Instancia con motivo de una solicitud de hábeas corpus anterior, y la nueva solicitud no aduce ningún fundamento que no haya sido presentado y adjudicado anteriormente, y el juez o tribunal está convencido de que la expedición del auto no servirá los fines de la justicia.

c) Ningún juez considerará una solicitud de hábeas corpus presentada por un confinado recluido en virtud de sentencia final que no haya agotado el remedio provisto en la Regla 192.1 de Procedimiento Criminal, Ap. II de este título. Cuando habiéndolo solicitado le hubiese sido denegado, el tribunal no considerara una solicitud de hábeas corpus a menos que aparezca que el remedio provisto por dicha regla era inadecuado o inefectivo para impugnar la validez de la detención.

En la determinación sobre la existencia o no de alguna circunstancia de excepción que amerite la expedición de un auto de un *Habeas Corpus,* los tribunales deberán evaluar si existe algún remedio en alzada en el que se pueda revisar el error alegado y así evitar la continuación de la detención ilegal invocada. Además, el tribunal deberá examinar si de las alegaciones surge: "(1) que ha habido una patente violación a algún derecho constitucional fundamental; (2) no ha habido una renuncia válida respecto a ese derecho y; (3) la necesidad de una vista evidenciaria". Quiles v. Del Valle, *supra,* pág. 468; Otero Fernández v. Alguacil, 116 DPR 733, 740-741 (1985).

Por su parte, respecto a los criterios de forma que validan la oponibilidad de una solicitud de *Habeas Corpus*, el Artículo 470 del Código de Enjuiciamiento Criminal, 34 LPRA sec. 1742, dispone como sigue:

La solicitud del auto se hará a petición firmada por la persona a cuyo favor se hace o por otra a nombre de aquélla, y especificará lo siguiente:

(1) Que la persona a cuyo favor se solicita el auto está encarcelada y privada de su libertad, el funcionario o persona que le privó de la libertad, y el sitio o lugar en donde se encuentra, describiendo las partes, si son conocidas o desconocidas.

(2) Si se alega que la encarcelación es ilegal, la solicitud ha de contener también las razones en que se funde la pretendida ilegalidad.

(3) La solicitud ha de ser jurada por la persona que la haga.

**B.**

La jurisdicción del sistema legal norteamericano está compuesta de dos (2) soberanías: la estatal y la federal. Ponzi v. Fessendem, 258 US 254, 259 (1922); Pueblo v. Vélez Torres, *supra,* pág. 187. Con el fin de mantener un balance adecuado, cuando estas dos (2) soberanías intenten ejercer su jurisdicción sobre un mismo individuo, es necesario que existan reglas definitivas fijando el poder de las cortes, así como el espíritu de cortesía interjurisdiccional o *reciprocal comity* para promover un procedimiento ordenado. Pueblo v. Vélez Torres, *supra.* Pese a que, la aludida cortesía interjurisdiccional no es de carácter obligatorio, fomenta a que ambas jurisdicciones cooperen entre sí en aras de mantener una sana administración de la justicia. Íd.

Con el fin de evitar conflictos entre la jurisdicción estatal o federal, se estableció mediante jurisprudencia federal, que el primero en asumir control del litigio deberá ser permitido agotar sus remedios antes que el otro foro intente llevar a cabo su procedimiento. Ponzi v. Fessendem, *supra,* pág. 260. En otras palabras, la jurisdicción que primero arreste a un acusado tiene jurisdicción primaria sobre este. En Pueblo v. Vélez Torres, *supra,* pág. 187, nuestro Tribunal Supremo ilustró la aludida cortesía interjurisdiccional con un precedente federal del Quinto Circuito:

> [L]a jurisdicción que primero arrestó a un acusado no era privada de su custodia hasta que culminara el término de reclusión. **Sin embargo, esta podía ceder su control sobre la persona para que fuera procesada por el gobierno federal sin que su acción se entendiera como una renuncia de la jurisdicción previamente adquirida**. **Cuando esta cesión temporera culmine acorde con el principio de *comity*, el foro que primero arrestó al acusado puede**

**continuar su procedimiento hasta que agote su remedio.** A falta de un acuerdo entre dos jurisdicciones sobre cómo procesar a una persona que ha delinquido en ambas, el mecanismo que se utiliza regularmente para gestionar el traslado de un individuo a estos fines es el auto de *habeas corpus.* US v. Evans, 159 F.3d 908, 911 (4to Cir. 1998). (Énfasis nuestro).

Igualmente, Pueblo v. Vélez Torres, *supra,* pág. 189, aclaró que la jurisdicción que primero ejerce su autoridad sobre determinada persona no la renuncia hasta que se cumpla satisfactoriamente la pena impuesta. Ahora bien, esto no significa que la jurisdicción primaria puede imponerle condiciones al ejercicio futuro de otra soberanía de sus propios poderes.

Empero, la jurisdicción primaria no está desprovista de remedio cuando el reo se encuentra en custodia física de la jurisdicción secundaria. Esto es el auto de *Habeas Corpus,* que permite solicitar a las autoridades de la jurisdicción secundaria que, tan pronto culmine el proceso acusatorio, facilite el traslado a la jurisdicción primaria para hacer cumplir la pena impuesta. Íd., pág. 190.

## C.

En nuestro ordenamiento penal, las sentencias pueden cumplirse de forma concurrente o consecutiva. En lo particular, la Regla 179 de Procedimiento Criminal, 34 LPRA Ap. II, dispone que:

> Cuando una persona fuere convicta de un delito, el tribunal sentenciador, al dictar sentencia, **deberá determinar si el término de prisión impuesto habrá de cumplirse consecutiva o concurrentemente con cualquiera o cualesquiera otros términos de prisión.** Si el tribunal omitiere hacer dicha determinación, el término de prisión impuesto se cumplirá concurrentemente con cualesquiera otros que el tribunal impusiere como parte de su sentencia, **o con cualesquiera otros que ya hubieren sido impuestos a la persona convicta.** [...] (Énfasis en el original).

Ahora bien, por excepción existen unas circunstancias que impiden al reo cumplir de forma concurrente. Véase, Regla 180 de

Procedimiento Criminal, 34 LPRA Ap. II; Pueblo v. Valentín Rivera, 119 DPR 281, 283 (1987).

En Pueblo v. Casanova Cruz, 117 DPR 784, 787 (1986), el Tribunal Supremo aclaró que para que término de reclusión sea cumplido consecutivamente con otro, debe existir al menos otra sentencia con la que pueda ser consecutiva. Es decir, la segunda sentencia es la que únicamente puede ser consecutiva o concurrente con la primera sentencia. Pueblo v. Vélez Torres, *supra,* pág. 185. Por tanto, le corresponde al juez(a) federal o estatal de la segunda sentencia la determinación en cuanto a cómo deberá cumplirse con la sentencia previa. Íd., pág. 186. En caso de que el juzgador no especifique cómo se cumplirá la sentencia, se entenderá que será cumplida concurrentemente. Íd.

### III.

El señor Molina Estévez alega que el TPI erró al concluir que el caso de autos era distinguible del precedente Pueblo v. Vélez Torres, *supra,* ya que la sentencia federal estableció la consecutividad de los delitos. Igualmente, aduce que el foro primario incidió al no reconocer que el tribunal de Puerto Rico renunció tácitamente a su jurisdicción primaria al no reclamar la custodia del peticionario, pese a haber sido notificado formalmente de su localización en custodia federal. Por último, este entiende que el TPI violentó la doctrina de primacía jurisdiccional, el debido proceso de ley y los principios de cortesía interjurisdiccional.

Al estar estrechamente relacionados, discutiremos los errores señalados en conjunto.

En primer lugar, conviene explicar el precedente Pueblo v. Vélez Torres, *supra,* y porqué este es distinto al caso de autos. Veamos.

En el aludido precedente, el foro primario dictó *Sentencia* en la cual impuso una pena de tres (3) años de cárcel mediante el privilegio de sentencia suspendida. Posteriormente, el Ministerio Público presentó una *Moción Solicitando Revocación de Libertad a Prueba* y alegó que el señor Vélez Torres incumplió con las condiciones de esta, ya que había cometido un delito federal. Ese día, el TPI ordenó el arresto el señor Vélez Torres, pero esto no se llevó a cabo ya que se encontraba bajo custodia federal. Luego, el mismo foro primario emitió una *Resolución* mediante la cual revocó la libertad a prueba del señor Vélez Torres y ordenó, entre otras cosas, que el resto de la pena se cumpliera consecutivamente con cualquier otra que el peticionario estuviera cumpliendo y cualquier otra que en su día recayera por proceso pendiente de adjudicación. Íd., págs. 178-179. Así las cosas, el Tribunal Federal para el Distrito de Puerto Rico dictó Sentencia mediante la cual le impuso al señor Vélez Torres la pena de noventa y cuatro (94) meses e indicó que sería concurrente con la impuesta en el procedimiento local. Íd., pág. 179.

Ante ese cuadro fáctico, el Tribunal Supremo explicó que, si el foro local interesaba que el señor Vélez Torres cumpliera la pena estatal en una institución penal local, tenía a su disposición el auto de *Habeas Corpus* para solicitar a las autoridades federales que, tan pronto culminara el proceso acusatorio federal, facilitara el traslado del señor Vélez Torres a las autoridades estatales. Íd., pág. 190. De esa manera, podía encarcelarlo y hacer cumplir la pena estatal. Así pues, dado que, el foro federal determinó que las sentencias se cumplirían concurrentemente procedía restarle a su término de reclusión lo cumplido en la jurisdicción estatal. Íd.

Según reseñamos, acorde al principio de cortesía interjurisdiccional, el foro estatal como jurisdicción primaria puede

ceder su control sobre la persona para que sea procesada por el gobierno federal, sin que su acción se entienda como una renuncia de la jurisdicción previamente adquirida. Íd., pág. 187. Cuando esta cesión temporera culmine, el foro estatal puede continuar su procedimiento. Claro está, esto dependerá de si en esa segunda sentencia se cumplió también la primera sentencia, toda vez que se pudo haber establecido que sería de cumplimiento concurrente. Pues es el juez de la segunda sentencia quien determina si la pena se cumplirá de manera consecutiva o concurrente con la sentencia previa. Íd., pág. 186.

En el caso de autos, el Tribunal Federal adquirió jurisdicción secundaria y sentenció al señor Molina Estévez de manera consecutiva con la impuesta en Puerto Rico. En específico, el foro federal dispuso: *"Seventy-Five (75) Months- Said sentence be served **consecutive** to the revocation and pending charge in Superior Court, San Juan, Puerto Rico".* (Énfasis nuestro).[14]

Contrario al caso de Pueblo v. Vélez Torres, *supra,* en el caso del epígrafe el foro federal determinó que la pena se cumpliría de manera consecutiva. En cambio, en el aludido precedente, el foro federal dispuso que la pena se debía cumplir de manera concurrente. Adviértase que, esto es lo que resulta distinguible de Pueblo v. Vélez Torres, *supra,* y el caso ante nos. Ambas situaciones son distintas, ya que al Tribunal Federal indicar que la pena se cumpliría de manera consecutiva con la estatal, se ejerció la cortesía interjurisdiccional, toda vez que al este ostentar la custodia física del señor Molina Estévez se cumpliría primero la sentencia federal, para luego cumplir el término pendiente en Puerto Rico.

---

[14] Entrada #3, Anejo VI del SUMAC TPI, pág. 22.

De todo lo anterior, resolvemos que el foro primario no incidió al declarar "No Ha Lugar" la solicitud de *Habeas Corpus* del peticionario. Por tanto, le corresponde al señor Molina Estévez cumplir con la *Sentencia* pendiente en Puerto Rico.

## IV.

Por los fundamentos antes expuestos, se confirma la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones